## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DOUGLAS KLEIN, individually and on
behalf of all others similarly situated,

                            Plaintiff,        Case No.

    v.

SUNBEAM PRODUCTS, INC.,

                          Defendant.

## CLASS ACTION COMPLAINT FOR DAMAGES AND
## JURY TRIAL DEMAND

### NATURE OF THE ACTION

1.    This is a class action lawsuit against Defendant Sunbeam Products, Inc. ("Sunbeam" or "Defendant") for the manufacture, distribution, marketing and sale of Oster-brand French Door Countertop Ovens ("Oven(s)" or "Product(s)"),[1] all of which suffer from an identical defect.

2.    Sunbeam sold approximately 1.29 million Ovens in the United States, from August 2015 through July 2025, for a retail price between $140.00 and

---

[1] The Product at issue include Oster French Door Countertop Ovens with model numbers TSSTTVFDXL, TSSTTVFDDG, TSSTTVFDMAF and TSSTTVFDDAF.

$250.00.[2]

3.      Each of the 1.29 million Ovens have identical defective spring-loaded doors that unexpectedly close, posing a burn hazard to consumers, which Sunbeam failed to disclose to consumers at the time of purchase (the "Defect").

4.      As a result of the Defect, Sunbeam received at least 95 reports of the doors unexpectedly closing, resulting in burn injuries to consumers, including two reports of second-degree burns.[3]

5.      On September 25, 2025, Sunbeam and the United States Consumer Product Safety Commission ("CPSC") announced a voluntary Recall of the Products that instructed consumers to "immediately stop using" them. Hence, the Products are unreasonably dangerous and unsuitable for their principal and intended purpose.[4]

6.      Despite the Recall, which is not a form of adjudication, Sunbeam refuses to provide refunds for its admittedly defective products. Instead, consumers' only option is to attempt to repair the Product themselves with a repair kit consisting of clip-on devices, regardless of whether they have the aptitude or time to do so. Even more, the so-called repair kit is not yet available to consumers, with Sunbeam

---

[2]      https://www.cpsc.gov/Recalls/2025/Sunbeam-Products-Recalls-More-than-One-Million-Oster-French-Door-Countertop-Ovens-Due-to-Burn-Hazard ("Recall")

[3] *Id.*

[4] *Id.*

vaguely stating that the repair kits will "*begin* shipping in November," with limited information regarding the repair kit and whether and when it will be available to all consumers.[5]

7.    The Recall—which was only issued *after at least* 95 reports of malfunctions, including severe burns—is the practical opposite of how an effective recall should be designed. It is untimely as Sunbeam has known about the Defect for several years, as shown from consumer complaints dating back at least three years, which Sunbeam responded to on its own website. The Recall is also completely inadequate and fails to offer consumers any meaningful remedy, particularly considering that consumers are instructed not to use the Ovens without an adequate remedy currently available.

8.    Sunbeam's Recall also is inconsistent with general industry practices. It has become common practice for U.S. companies that sell small consumer goods to offer refunds as an alternative to repairs or replacements when their products are recalled. This option incentivizes consumers to surrender their dangerous products pursuant to the recall, thereby getting more of the dangerous products out of circulation.

9.    Sunbeam decided not to follow prevailing industry standards. Instead, Sunbeam implemented a half-hearted Recall that allows it to *say* it is doing the right

---

[5] https://recall.oster.com

thing, while protecting its bottom line.

10. Prior to the Recall, and despite the serious safety dangers presented by the Ovens, Defendant intentionally marketed and sold the Products as safe and fit for their intended purpose and failed to effectively disclose to consumers that the Ovens pose a risk of injury. In fact, Defendant specifically touted the ease of use of the French oven doors, boasting that the Products make cooking "fast and easy" and that "its elegant French Doors open with a single pull, making it easy to insert and remove food." Indeed, on its webpage, Defendant listed the ease and use of the French doors as the first feature, highlighting the importance and materiality of this product feature to consumers.

**Description**

The Oster® Extra-Large French Door Air Fry Countertop Oven with Faster Preheat* reduces overall cooking time and uses up to 50% less energy than conventional ovens. Its elegant French Doors open with a single pull, making it easy to insert and remove food. This Oster countertop oven's extra-large design features 3 rack positions for multi-level cooking, and accommodates up to 15"" x 12"" baking pans, a full family size chicken, or 2 large pizzas to make cooking full meals for the entire family fast and easy! Add a delicious crisp to your favorite recipes using the Air Fry function, or cook a variety of meals with any of the other 5 cooking functions, including Bake, Toast, Broil, Turbo Convection, and Warm. *compared to conventional ovens

- FRENCH DOORS: Elegant French doors open with a single pull, making inserting and removing meals easy and convenient
- EXTRA-LARGE CAPACITY: Fits baking pans up to 15" x 12", full family size chickens, or 2 large pizzas; its 3 rack positions are great for multi-level cooking, and for accommodating a wide variety of meal sizes
- 6 COOKING FUNCTIONS: Includes 6 cooking presets, such as Bake, Toast, Broil, Warm, Air Fry, and Turbo Convection, to easily cook a variety of foods
- FASTER PREHEAT: Designed with Faster Preheat* to reduce overall cooking time; uses up to 50% less energy than conventional ovens** *compared to conventional ovens **compared to model TSSTTVFDDG
- AIR FRY: Add a delicious crisp to your favorite recipes using 99.5% less oil* *compared to 3.7 L deep fryers
- 60-MINUTE TIMER WITH AUTO-SHUTOFF: Timer goes for up to 60 minutes and has an auto-shutoff
- INDIVIDUAL CONTROLS: Separate cooking function, time, and temperature controls for ease of use
- VERSATILE ACCESSORIES: Includes an air fry rack, wire/broil rack, durable baking pan, and removable crumb tray
- AIR FRY: Add a delicious crisp to your favorite recipes using 99.5% less oil* *compared to 3.7L deep fryers

11. These representations are inconsistent with the Defect, which actually make opening the French doors unsafe and dangerous, prompting Defendant to instruct consumers to not use the Products.

12. Defendant failed to disclose the Defect to consumers in its advertising and marketing, product packaging and user manuals.

13. The Defect existed at the point of purchase. Due to Defendant's marketing of the Products, along with Defendant's failure to disclose to consumers at the time of purchase that the Products were dangerous and defective, Plaintiff and class members trusted Defendant and its representations that the Products would be safe to use as intended and paid a premium for that important quality. Additionally, despite the Recall, defects in the Products persist, rendering the Products unfit and worth less than advertised and warranted.

14. The existence of the Defect is a material fact that reasonable consumers, including Plaintiff and class members, considered when deciding whether to purchase the Products. Before purchasing the Products, Plaintiff and class members did not know the Products had the Defect and that use of the Products for their intended and foreseeable purpose would place them at risk of harm.

15. Every Product suffers from the uniform Defect, which, unknown to consumers but known to Defendant, exists at the point of purchase and poses an unreasonable safety hazard to consumers, which prevents the Products from being

used, as the Recall instructs consumers to discontinue using the Ovens. As such, Plaintiff and all reasonable consumers are victims of the unfair bargaining power between them and Defendant based on Defendant's superior industry knowledge.

16.     Plaintiff brings this class action lawsuit seeking all available relief to consumers, to raise awareness that Sunbeam's Products suffer from the uniform Defect and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, No. SACV 19-1203 JVS, 2019 WL 6998661, at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## PARTIES

17.     Plaintiff Douglas Klein is a citizen of and domiciled in the State of Florida. In 2023, Plaintiff purchased an Oster French Door Countertop Oven in Florida, model number TSSTTVFDDG. The Oven Plaintiff purchased is one of the Products at issue in this case.

18.     Plaintiff experienced the Defect at issue in this case. After experiencing the Defect, Plaintiff called Oster's support personnel to ask if there is a solution for preventing the doors from slamming shut. The support agent told him that there was nothing wrong with the Product, and therefore nothing to be done. Plaintiff first began using silicon gloves to protect himself from burns when using the Oven and then decided to not use the Oven at all because he does not trust it.

19.     There were no warnings about the Defect on the Product box or in any of the marketing or packaging materials. The Defect was and is material to Plaintiff. If Defendant disclosed the Defect on the Product packaging or in any of the marketing or packaging materials, Plaintiff would not have purchased the Product, would not have purchased the Product on the same terms or would have promptly returned the Product if and when he had noticed the disclosure.

20.     Defendant Sunbeam is a Delaware corporation with a principal place of business in Atlanta, Georgia. Sunbeam designed, produced and marketed the Products at issue here, including at its principal place of business, and is responsible for the current CPSC Recall concerning those Products.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class exceed $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant. For example, Plaintiff is a citizen of the State of Florida, and for purposes of 28 U.S.C. § 1332(d), Defendant is a citizen of the State of Georgia given that its principal place of business is located in Georgia. *See* 28 U.S.C. § 1332(d)(10).

22.     The amount-in-controversy requirement is satisfied here. There are approximately 1,290,000 Products at issue. The average price of the Products was

$195.00. Therefore, the amount in controversy is over $251 million, without accounting for punitive damages and attorney's fees (*i.e.*, 1,290,000 x $195).

23.     This Court has personal jurisdiction over Defendant because its principal place of business is in this state. A substantial portion of the events giving rise to the claims alleged here occurred in this state.

24.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District and because Defendant engages in continuous and systematic business activities within this District.

## FACTUAL ALLEGATIONS

25.     The recalled Products include the Oster French Door Countertop Ovens with model numbers TSSTTVFDXL, TSSTTVFDDG, TSSTTVFDMAF and TSSTTVFDDAF.

26.     The Products were sold at Bed Bath and Beyond, Costco, Walmart, Amazon, Overstock and other stores nationwide. Each retailer was an authorized dealer of the Products.

27.     As stated by Defendant on its Oster-brand website, the Products suffer from a uniform defect: "the doors can close on consumers, posing a burn hazard."

28.     Defendant received at least 95 reports of the doors unexpectedly closing, resulting in burn injuries to consumers, including two reports of second-

degree burns.

29.     As detailed herein, Defendant was on notice of the Defect long before the Recall—as evidenced by the numerous complaints relating to the exact risks associated with the Recall. For example, on February 3, 2023, the CPSC forwarded the following complaint to Sunbeam, describing the Product as "one of the most dangerous appliances I have ever encountered":

> *I was severely burned by the Oster XL 11 in 1, digital french door oven and air fryer. I was burned on both arms while using the oven. The Oster XL is one of the most dangerous appliances I have ever encountered. The glass doors heat up very quickly and if you touch it accidentally or if someone brushes by it when the doors are open and you are putting food inside — the doors will close quickly and will burn your arms. If someone walks by when the doors are open and there is any vibration or even a slight tap—the oven doors will close on your arms while you are putting something inside. If you don't open the doors just right — they will close on your arms and burn you. There is no device to slow down the doors slamming shut on you. If you have one door that opens all the way and don't secure the other door by making sure it is completely open -it will close on you and will burn you. If someone wants to watch something bake and accidentally reaches out to touch the glass door they will be seriously burned. The entire area around the oven is also extremely hot. I implore you to investigate.*



(Photograph provided with report).

30.     Despite having the capability and expertise to identify and mitigate the Defect, Defendant failed to redesign the Products, recall the entirety of the Products or issue sufficient consumer warnings for several years after learning of the Defect. This delay contributed to the continued availability of defective Products and the repeated harm caused. Defendant prioritized profit over the integrity and safety of the Products and pushed the Products into the marketplace with the Defect.

31.     Defendant's actions and priorities in delaying the Recall clearly indicate a prioritization of profit over safety of consumers. Defendant made significant revenue from the sale of the Products, which were sold nationwide resulting in tens of millions of dollars or more in revenue.

32.     **Relevant Time Period:** The Products were sold from August 2015 through July 2025. There were no material changes to the Product packaging or other consumer facing materials during the relevant period.

33.     **The Omissions and Misrepresentations:** Defendant sold the Products as countertop ovens, and implied that they were safe and suitable for that purpose. However, Defendant failed to disclose the Products had defective doors, posing an unreasonable risk of injury. The risk associated with the Products was beyond any reasonable or nominal risk that might be associated with countertop ovens generally.

34.     The omission pertains to an unreasonable safety hazard that reasonable consumers consider to be material.

35.    Moreover, Defendant touts the convenience and ease of use of the French doors while knowing the Ovens contain a dangerous Defect that makes it unsafe for consumers to open the doors, insert and remove food, prompting Defendant to instruct consumers to discontinue using the Products.

36.    Plaintiff and class members would not have purchased the Products, or would not have purchased them on the same terms if the Defect was disclosed. The materiality of the Defect is also demonstrated by the existence of the Recall.

37.    At the time of purchase, Plaintiff and class members did not know and did not have reason to know that the Products were defective. Defendant had exclusive knowledge of that fact.

38.    Defendant made misrepresentations to Plaintiff and class members, while suppressing the safety Defect. Specifically, by displaying the Products and describing their functions and parts, Defendant implied that the Products were suitable and reasonably safe to use as countertop ovens, without disclosing that they had a safety-related Defect.

39.    Defendant misrepresented, concealed and otherwise omitted material facts that are important to Plaintiff and class members in deciding whether to purchase the Products. Defendant intended to, and did, deceive reasonable consumers, including Plaintiff and class members. Accordingly, Plaintiff and class members: (a) reasonably relied upon Defendant's misrepresentations and

concealment of these material facts; and (b) suffered monetary injury as a proximate result of that justifiable reliance.

40.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Indeed, the defect: (a) can cause serious injury; and (b), as conceded by Defendant, renders the Products unsuitable for their primary feature: cooking.

41.     **Inadequacy of Legal Remedies:** Plaintiff and members of the class are entitled to equitable relief because legal remedies are inadequate.

42.     Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

43.     Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff failed to sufficiently adduce evidence to support an award of damages.

44.     Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks non-

restitutionary disgorgement of profits in connection with his unjust enrichment claim.

45.     Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

46.     In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

47.     **The Recall Does Not Render This Lawsuit Moot:** The Recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit. Moreover, a recall is not a form of adjudication.

48.     First, no refunds are provided, and as a result, this class action seeks monetary relief that the Recall does not provide.

49.     Second, the Recall was only briefly publicized and in a very limited manner. Therefore, on information and belief, many eligible class members remain unaware of it, and that is likely why the response rate has been low. The amount and reach of the publicity concerning the notice of the Recall was not comparable to the typical notice provided in a class action.

50.     **Tolling:** For years, Defendant had actual knowledge that the Products suffered from the Defect. Defendant had a duty to accurately disclose the safety risks with its Products, including the Defect. Yet despite its duty and knowledge, Defendant misrepresented that fact. Defendant made, and continues to make,

affirmative misrepresentations to consumers to promote the sale of the Products, including failing to disclose the Defect. Defendant misrepresented material facts that are important to Plaintiff and class members in deciding whether to purchase the Products. Defendant's misrepresentation was knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and class members. As a result, Plaintiff and class members reasonably relied upon Defendant's affirmative misrepresentations of these material facts and suffered injury as a proximate result of that justifiable reliance. The Defect was not reasonably detectible to Plaintiff and class members. At all times, Defendant actively and intentionally concealed the Defect in its Products and failed to inform Plaintiff and class members of the actual risks in normal use. Plaintiff's and Class Members' lack of awareness was thus not attributable to a lack of diligence on their part. The statements, words and acts by Defendant were made for the purpose of misrepresenting the truth that the Products. Defendant failed to disclose the Defect in the Products for the purpose of delaying Plaintiff and class members from filing a complaint on their causes of action. Due to Defendant's active misrepresentation to Plaintiff and class members of the true risks in the use of its Products, any and all applicable statutes of limitations that may otherwise be applicable to the allegations are tolled. Moreover, Defendant is estopped from relying on any statute of limitations in light of its active misrepresentation regarding the Products. Furthermore, the causes of action alleged

herein did not occur until Plaintiff and class members discovered the Products suffered from the Defect. Plaintiff and class members had no realistic ability to discern that the Products suffered from the Defect. In either event, Plaintiff and class members were hampered in their ability to discover their causes of action because of Defendant's active misrepresentation regarding the Defect.

## DEFENDANT'S ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE DEFECT AND DUTY TO DISCLOSE THE DEFECT

51.     Defendant knew, or should have known, when it sold the Products to the public that they suffered from the Defect.

52.     Consumers lodged complaints regarding the Defect on Defendant's own website, and Defendant responded to these complaints, as shown below:

**Not good.**

Nonu

<u>3 years ago</u>

Have had this unit with protection less than a year. **Doors will slam**. It quit heating above 200. I can't get in touch with Allstate or Oster to get service.[6]

Response from Oster:

**Oster**

Thank you for contacting Oster®. We value your continued support of our products. **We are sorry to hear that your Oster Manual French Door Air**

---

[6]     https://www.oster.com/cooking-appliances/countertop-ovens/oster-manual-french-door-air-fry-oven/SAP_2142004.html (emphasis added) (accessed Oct. 9, 2025).

**Fry Oven's door is slamming**. This is certainly not the experience we want you to have. Please know that we appreciate feedback like this as it serves an important role in improving our products. Please contact us directly regarding the warranty replacement. Take note that our products have a 1 year limited warranty and we would love to get this taken care of as soon as possible. We hope this helps. Have a good day!

\*\*\*

**Tons of potential, but honestly just dangerous**

JessicaColorado

3 years ago

We purchased this model about 6 months ago now and wanted to give it a fair shake before reviewing, because we LOVE Oster products, have products passed down from the 80s that still work and have never had complaints about any of our Osters, but after 6 months we're still not fans of this product…. The next 2 issues are safety-related and the reason **I would absolutely not recommend this product. The french doors cannot be opened with one hand and must be opened completely on both sides or they will slam shut on you. Hard to do and super dangerous to attempt when the unit is on**. Additionally, the exterior of the unit gets very hot, like burned my hand to the point of blistering when I accidentally grazed the side of the unit near the back. This happened after 30 days so I was unable to return to Walmart (where I purchased) or I absolutely would have and would never have looked back. Since that incident, I haven't used the device and don't intend to use it again.

Response from Oster:

**Oster**

Thank you for reaching out to Oster®. **We are sorry to hear that your Oster® Manual French Door Air Fry Oven gets very hot and burned your hand**. That is certainly not the experience we want you to have. Our toaster ovens have a 1-year limited warranty and we would love nothing more than to correct this issue and restore your faith in

Oster®, as we have been manufacturing high-quality products for decades and we expect them to last. Please discontinue use and contact us directly or fill in the "Contact us" link provided below so we can determine the best resolution. We look forward to hearing from you. Have a great day! https://www.oster.com/support/contact-us[7]

\*\*\*

**Worst product in my 40 years of existence**

NewRagingChef

2 years ago

I have to be short and frank. **This is by far the worst product I have bought in my 40 years of existence**. Have had the oven for 6 months (throwing it after i finish this input) ... - **Doors are way too snappy, i.e. snapping back too quickly. Have multiple times taken out a pot and the doors have hit the pot resulting in spillage or worse**…

Response from Oster:

**Oster**

Thank you for reaching out to Oster®. We appreciate your time and effort in bringing this to our attention. We are sorry to hear that the Oster® Manual French Door Air Fry Oven did not meet your expectations. That is certainly not the experience we want you to have. We will make sure that our design and production teams are made aware of your feedback. We are always looking for ways to better our product, and your feedback would certainly help us in improving it moving forward. For warranty claims, take note that your toaster oven has a 1-year limited warranty. If your concern is a warranty-related issue, we would like to request that you contact us directly so we can gather more information from you. We hope this helps. Have a good day![8]

---

[7] *Id.* (emphasis added).

[8] *Id.* (emphasis added).

\*\*\*

**Cooks turkey wings perfectly**

Doors are burning me

<u>a year ago</u>

I purchased this last July. It was working great and I mean I can cook whatever. **Well before the doors broke. Now I can't use it because the doors won't stay opened. So I burn myself every time I use the oven because they're hot and close as I remove or check my food**. **I've been trying to file a claim and have been unsuccessful**.

Response from Oster:

**Customer Care**

Hello, It sounds as though your Oster® Manual French Door Air Fry Oven has not performed as intended. This is not the experience we would like you to have with one of our items. Please reach out to us via our official "Contact Us" website or call 1-800-334-0759. We're available Mon.-Fri. 9am -5pm Eastern Time. Our product specialists will be more than happy to help you. Thank you![9]

\*\*\*

**So so**

Terikay

<u>a year ago</u>

The doors stopped working within one week **now every time I use it the dang doors slam shut** it's annoying now saving to buy Emeril's oven that will make me happy

Response from Oster:

---

[9] *Id.* (emphasis added).

**Customer Care**

Hello, We appreciate you for taking the time to write to us and we use all the feedback we get to continually improve everything we do. If you require our assistance, please reach out to us via our official Oster "Contact Us" https://www.oster.com/support/contact-us or LiveChat. We're available Mon.-Fri. 9am -5pm Eastern Time. Thank you! Oster Care

Response from Oster:

**Brand Team**

Thank you for reaching out to Oster®. We are sorry to hear about your experience with the toaster oven where the glass doors stopped working. We will be glad to check for options to see how we can help you further. Your Oster® Manual French Door Air Fry Oven has a 1-year limited warranty. We would like to request you to contact us directly or fill in the "Contact us" link provided below to gather more information and provide you with the best resolution. Have a great day! https://www.oster.com/support/contact-us[10]

\*\*\*

**Doors will close and burn you**

Another dissatisfied

a year ago

**I have been burned several times by the doors closing while I am removing the food**. This appliance sucks. Don't waste your money!!!

Response from Oster:

**Customer Care**

---

[10] *Id.* (emphasis added).

18

Hello! Thank you very much for your feedback on our MANUAL FRENCH DOOR OVEN WITH AIR FRY! We are very sorry to hear about your experience and we sincerely apologize for the inconvenience caused! It should not have happened! We would like to have a chance to assist you further, that is why we strongly encourage you to reach out to us directly via our official "Contact Us" page. Thank you! Oster Consumer Care[11]

\*\*\*

**Burn Warning**

Kbates

a year ago

**The doors don't stay open and will close on you. Resulting in burns**. Oven does not cook evenly.

Response from Oster:

**Customer Care**

Hello! Thank you very much for your feedback! **We are sincerely sorry to hear about your experience with our oven and we apologize for the inconvenience it caused for you! It definitely should not have happened!** We would like to have a chance to assist you further with your unit, that is why we strongly encourage you to reach out to us directly via https://www.oster.com/support/contact-us or through LiveChat. We're available Mon.-Fri. 9am -5pm Eastern Time. Thank you! Oster® Consumer Care

Response from Oster:

**Brand Team**

Thank you for reaching out to Oster®. **We are sorry to hear that the doors don't stay open** and that your oven does not cook evenly. That is

---

[11] *Id.* (emphasis added).

certainly not the experience we want you to have. Your Oster® Manual French Door Air Fry Oven has a 1-year limited warranty, we'd kindly request that you contact us directly so we can determine the best resolution. Have a good day! https://www.oster.com/support/contact-us[12]

\*\*\*

### Door malfunction

 

Omamma

a year ago

I love the ease of operation and the different settings. The doors are just not designed well. **We were having difficulty with closing the doors**. We finally had to saw one of the control arms loose and have to open and close both doors manually. **Oster needs to re-think the dual spring door connections!**[13]

Response from Oster:

### Customer Care
Hello, We appreciate you for taking the time to write to us and we use all the feedback we get to continually improve everything we do. If you require our assistance, please reach out to us via our official Oster "Contact Us" https://www.oster.com/support/contact-us or LiveChat. We're available Mon.-Fri. 9am -5pm Eastern Time. Thank you! Oster Care

---

[12] *Id.* (emphasis added).

[13] *Id.*

Response from Oster:

**Brand Team**
Thank you for reaching out to Oster®. We are sorry to hear that you are having difficulty with closing the doors. That is certainly not the experience we want you to have. Your Oster® Manual French Door Air Fry Oven has a 1-year limited warranty, we'd kindly request that you contact us directly so we can determine the best resolution. Have a good day! https://www.oster.com/support/contact-us[14]

\*\*\*

**The French Doors are highly problematic and hazard**



Kevo

a year ago

**I have an older version of this model specifically with the French doors and they have always been an issue whether it's smacking back on our arms burning us or simply not shutting properly. It doesn't look like Oster has fixed this or the bad hinge design, as I see a review here with photos that reflect ours.** I finally just had to

---

[14] *Id.* (emphasis added).

break the hinges altogether and we'll have to buy a new oven this weekend.

Response from Oster:
**Customer Care**

Hello! Thank you very much for your feedback! We are sincerely sorry to hear about your experience and we apologize for the inconvenience caused! Thank you for your insight! For any further assistance, please reach out to us via https://www.oster.com/support/contact-us or through LiveChat. We're available Mon.-Fri. 9am -5pm Eastern Time. Thank you! Oster® Consumer Care.

Response from Oster:

Thank you for reaching out to Oster®. **We are sorry to hear that the the French doors of your toaster oven keeps on smacking back on your arms causing a burns and it is not shutting properly until the hinges is broken**. That is certainly not the experience we want you to have. No worries, we are here to help. Your Oster® Manual French Door Air Fry Oven has a 1-year satisfaction guarantee. Please discontinue using it, and contact us directly or fill in the "Contact us" link provided below to help you get the best resolution. We look forward to hearing from you. Have a good day! https://www.oster.com/support/contact-us[15]

53.     Additionally, Defendant knew, or should have known, that the Defect caused the Products to fail in their regular and intended purpose including that they were unsafe, unstable and unsuitable for consumers' use.

54.     Defendant's knowledge of the Defect is established through its design of the Products, knowledge of industry guidance and recommendations regarding safety, receipt of multiple reports of doors slamming shut and resulting injuries, and

---

[15] *Id.* (emphasis added).

lastly, the Recall, which further confirms that the Defect presented a risk of harm and did cause harm for several years.

55.    Despite its knowledge, upon information and belief, Defendant did not remedy or eliminate the Defect in the Products or remove them from the stream of commerce.

56.    Instead, Defendant continued to unlawfully advertise the Products as safe and durable and continued to sell the unreasonably dangerous Products to consumers.

57.    The Recall, for the reasons stated above, does not absolve Defendant of liability, especially given its position is a worldwide leader in the appliance market.

58.    In conjunction with Defendant's vast experience with kitchen appliances, including the Ovens, these facts and reports of harm illustrate that Defendant knew, or should have known, of the Defect and the resulting incapability of the Products to conform to their marketing.

59.    Defendant had a duty to disclose the Defect and to not conceal the Defect from Plaintiff and class members.

60.    Defendant's failure to disclose, and/or active concealment of, the Defect places Plaintiff and class members at risk of serious injury.

61.    Had Plaintiff, class members and the consuming public known that the Products were defective, unsuitable for their marketed and intended use and risk

their health and safety, they would not have purchased them or would have paid less for them.

62.     Defendant wrongly placed on Plaintiff and class members the burden, expense and difficulty involved in discovering the Defect and determining that the Products are unsafe and paying for the cost of damages caused by the Defect.

## CLASS ALLEGATIONS

63.     ***Class Definition***: Plaintiff brings this action on behalf of all people in the following Nationwide and Florida Classes:

The Nationwide Class is defined as follows:

> **Nationwide Class**:
> During the fullest period allowed by law, all persons who purchased a Product in the United States, for personal use and not resale, until the date notice is disseminated.

The Florida Class is defined as follows:

> **Florida Class**
> During the fullest period allowed by law, all persons who purchased a Product in Florida, for personal use and not resale, until the date notice is disseminated.

64.     The above class definitions are placeholders that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for

class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

65.     Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, Defendant's parent or related companies, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

66.     Plaintiff seeks only damages and equitable relief for himself and the putative classes. Excluded from the Class are any claims for personal injuries, wrongful death, or emotional distress.

67.     **Numerosity.** Members of the class are so numerous that their individual joinder herein is impracticable. On information and belief, each class includes hundreds of thousands of consumers or more given that 1.29 million units were recalled. The precise number of class members and their identities are unknown to the Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant or other means.

68.     **Commonality and Predominance.** Common questions of law and fact exist as to all class members and predominate over questions affecting only

individual class members. Common legal and factual questions include, but are not limited to:

(a)   Whether the Products contain the Defect alleged herein;

(b)   Whether Defendant knew, or should have known, of the Defect;

(c)   Whether Defendant had a duty to disclose the Defect to consumers;

(d)   Whether Defendant's conduct alleged herein violated the Florida Deceptive and Unfair Trade Practices Act;

(e)   Whether Defendant failed to adequately warn Plaintiff and class members that the Products contained the Defect and resulting risk of harm;

(f)   Whether Defendant's representations and omissions were misleading or deceptive;

(g)   Whether Defendant omitted or failed to disclose material information to Plaintiff and class members regarding the Products;

(h)   Whether Defendant concealed from and/or failed to disclose to Plaintiff and class members that the Products contain the Defect;

(i) Whether Defendant's conduct was unfair or illegal;

(j) Whether Plaintiff and class members suffered economic injury;

(k) Whether Defendant's conduct violates public policy;

(l) Whether Defendant was unjustly enriched;

(m) Whether Plaintiff and putative members of the class suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

(n) Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative class in connection with selling the Products with the Defect;

(o) Whether Plaintiff and members of the putative class are entitled to monetary damages and, if so, the nature of such relief; and

(p) Whether Plaintiff and class members are entitled to injunctive, declaratory or other equitable relief including modification of the Recall.

69. **Typicality.** Plaintiff's claims are typical of the claims of the class in

that Plaintiff and the class sustained damages as a result of Defendant's uniform wrongful conduct.

70. **Adequacy.** Plaintiff will fairly and adequately protect the interests of class members. Plaintiff retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that are antagonistic to those of the Class.

71. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the classes; the classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

72. Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and class members and will likely retain the benefits of its wrongdoing.

## <u>COUNT I</u>
**Violation of The Florida Unfair and Deceptive Trade Practices Act,**
**FLA. STAT. §§ 501.201, *et seq.***
(On Behalf of Plaintiff and the Florida Class)

73. Plaintiff incorporates and realleges paragraphs 1-72 as though fully set

forth herein.

74. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.204(1).

75. Plaintiff and Florida Class members are "consumers" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA. *See* Fla. Stat. Ann. §§ 501.203(6)-(7).

76. Defendant advertised, offered or sold goods or services in Florida and engaged in "[t]rade or commerce" as defined by the FDUTPA, directly affecting the people of Florida. *See* Fla. Stat. Ann. § 501.203(8).

77. Defendant engaged in unconscionable, unfair and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1).

78. Defendant, directly or through its agents, employees and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing and failing to disclose materials facts regarding the Products, including that such Products contained the Defect, were not reasonably safe, unreasonably dangerous and not fit to be used for their intended purpose as detailed herein.

79.    Specifically, by knowingly and intentionally misrepresenting, omitting, concealing and failing to disclose material facts regarding the Products, including that such Products contained the safety Defect, were not reasonably safe, were unreasonably dangerous and not fit to be used for their intended purpose, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

80.    Defendant's misrepresentations, omissions, concealments and failures to disclose as alleged herein were material because they were likely to deceive reasonable consumers.

81.    Defendant's misrepresentations, omissions, concealments and failures to disclose regarding the defective and unreasonably dangerous nature of Products were disseminated to Plaintiff and Florida Class members in a uniform manner.

82.    Defendant's misrepresentations, omissions, concealments and failures to disclose material facts were made to Plaintiff and the Florida Class each time they purchased the Products.

83.    Defendant knew that these misrepresentations, omissions, concealments and failures to disclose were material. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

84.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and Florida Class members, about the defective and unreasonably dangerous nature of the Products.

85.    Defendant intended that its misrepresentations, omissions, concealments and failures to disclose material facts would induce Plaintiff and the Florida Class to purchase the Products.

86.    Plaintiff and the Florida Class reasonably relied on the misrepresentations, omissions, concealments and failures to disclose material facts regarding the Products as described herein.

87.    Plaintiff and the Florida Class would not have purchased, or at minimum would not have paid as much for the Products had they been accurately marketed, advertised, packaged and sold.

88.    Defendant specifically touted the ease of use of the French oven doors, boasting that the Products make cooking "fast and easy" and that "its elegant French Doors open with a single pull, making it easy to insert and remove food."

89.    These representations are inconsistent with the Defect, which makes opening the French doors unsafe and dangerous, prompting Defendant to instruct

consumers to not use the Products.

90.     Defendant failed to disclose to the Defect to consumers in its advertising and marketing, product packaging and user manuals.

91.     Plaintiff and the Florida Class did not know that the Products contained the Defect, nor could Plaintiff and the Florida Class discover these concealed facts through reasonably diligent investigation.

92.     Plaintiff and the Florida Class acted reasonably in relying on Defendant's representations and omissions, the truth of which they could not have discovered.

93.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and the Florida Class suffered and will continue to suffer injury, ascertainable losses of money or property and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

94.     Defendant's violations present a continuing risk to Plaintiff and the Florida Class members, as well as to the general public. Defendant's unlawful acts and practices complaints of herein affect the public interest.

95.     As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiff and Florida Class members seek all monetary and nonmonetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.21; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla.

Stat. § 501.2105(1); and any other relief that is just and proper.

**COUNT II**
**Unjust Enrichment**
(On Behalf of Plaintiff and the Nationwide Class and
alternatively, the Florida Class)

96.     Plaintiff incorporates and realleges paragraphs 1-72 as though fully set forth herein.

97.     Plaintiff brings this cause of action individually and on behalf all other class members.

98.     To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

99.     Plaintiff and the class members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the sale of defective products.

100.    Defendant knew of the benefit conferred on it by Plaintiff and the class members.

101.    Defendant was unjustly enriched in retaining the revenues derived from Plaintiff's and the class members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Products were dangerous and/or failed to correct the Defect by providing refunds or replacing the Products.  This caused injuries to Plaintiff and class members because they would not have purchased the Products or would have

paid less for them if the true facts concerning the Products and the Defect had been known.

102.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

103.    Defendant profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

104.    Plaintiff and the class members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

105.    As a direct and proximate result of Defendant's actions, Plaintiff and class members suffered in an amount to be proven at trial.

106.    Class members suffered an injury in fact and lost money as a result of Defendant's unjust conduct.

107.    Putative class members lack an adequate remedy at law with respect to this claim and are entitled to equitable relief, including non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an order certifying the classes alleged in this complaint, and naming Plaintiff as the representative of those classes;

b. For an order declaring Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and class members on all counts asserted herein;

d. For actual, compensatory, statutory and/or punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For an order awarding Plaintiff and class members their reasonable attorneys' fees, expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: October 13, 2025.          Respectfully submitted,

**BARNES LAW GROUP, LLC**

*/s/ J. Cameron Tribble*
J. Cameron Tribble
Georgia Bar No. 754759
31 Atlanta Street
Marietta, GA 30060
Telephone: 770-227-6375
ctribble@barneslawgroup.com

*Local Counsel for Plaintiff and the Proposed Class*

Rachel Soffin
Ga. Bar No. 255074
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
E-Mail: rsoffin@pwfirm.com

Joel D. Smith*
**SMITH KRIVOSHEY, PC**
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

Yeremey O. Krivoshey*
**SMITH KRIVOSHEY, PC**
28 Geary Street, Suite 650 # 1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

Melissa S. Weiner*
Ryan T. Gott*
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
E-Mail: mweiner@pwfirm.com
E-Mail: rgott@pwfirm.com

Christopher Jennings*
Tyler Ewigleben*
**JENNINGS & EARLEY, PLLC**
500 President Clinton Avenue, Suite 110

Little Rock, AR 72201
Telephone: (501) 255-8569
Facsimile: (501) 344-6161
E-Mail: chris@jefirm.com
E-Mail: tyler@jefirm.com

***Attorneys for Plaintiff and the Proposed Class***

*\*Pro Hac Vice* application forthcoming